CASINO PRODUCTIONS, INC., Plaintiff, *v.* VITAPHONE CORPORATION, Defendant.

Supreme Court, Trial Term, New York County, February 18, 1937.

*A. Norick* [*A. E. Farmer* of counsel], for plaintiff.

*Friedman, Bareford & Hazen* [*S. P. Friedman* and *J. D. Karp* of counsel], for the defendant.

MILLER, J. This is an action to recover damages against the defendant by reason of its infringement of plaintiff's common-law copyright in a dramatic composition designated, for the purposes of this action, as "The Postman Always Rings Twice."

In December, 1934, the Casino de Paree, Inc., plaintiff's assignor, employed Lew Brown, Henry Akst and Elsa Maxwell to write a revue. The revue was written by them and was thereafter produced by the Casino de Paree. The act "The Postman Always Rings Twice" was a part of this revue.

On March 11, 1935, the Casino de Paree, Inc., assigned to the plaintiff this revue then being produced by it, of which the act entitled "The Postman Always Rings Twice" was a part. The revue was produced by the Casino de Paree, Inc., from about the middle of February, 1935, until about April 29, 1935. The music and lyrics of the song entitled "When I Hear My Doorbell Ring" were part of the act. The music and lyrics of the song were not assigned to plaintiff, but it was given the right to use the song as a part of the act.

In February, 1935, Lew Brown, Akst and Maxwell, as composers, transferred their right, title and interest in the song "When I Hear My Doorbell Ring" to Harms, Inc., as publisher, together with the right to grant non-exclusive licenses for the use, recordation, reproduction and exhibition of the same in and in connection with motion pictures.

In September, 1935, Harms, Inc., gave to Warner Bros. Pictures, Inc., "permission to record and make two partial uses of the musical selection 'When I Hear My Doorbell Ring' in the production of the motion picture entitled 'The Doorman's Opera' * * * and to license exhibitors to reproduce the said song in the exhibition and performance of the said talking motion picture." This license did not include the dramatization of the song.

The assignment from the composers to Harms, Inc., contains the following express reservation:

"II. The Composers hereby expressly reserve unto themselves the sole and exclusive right to cause the said musical compositions to be rendered and performed upon the living stage in the Play, and the right to use, perform and exhibit the aforesaid musical compositions in or in connection with motion pictures with sound accompaniment of the Play as an entirety, but the Publisher is hereby granted and shall have the sole and exclusive right at its discretion, to grant, upon such terms as it may deem proper, non-exclusive licenses for the world-wide synchronization rights of the separate musical compositions of the Play (not the Play as an

entirely), *i. e.*, the non-exclusive right to use, record, reproduce and exhibit such separate numbers in connection with sound pictures, and to collect all fees therefrom."

Under this reservation no part of the play, but only the separate musical compositions of the play, could be licensed by Harms, Inc., the publisher.

Subsequent to September, 1935, the defendant produced a motion picture entitled " The Doorman's Opera," which consisted of several scenes. In one or two scenes of the picture the defendant copied and used the " pretentious and important " parts of the play or act " The Postman Always Rings Twice." At the time the composers, Lew Brown, Akst and Maxwell, transferred to Harms, Inc., their right and interest in the music and lyrics of the song " When I Hear My Doorbell Ring," the act or sketch " The Postman Always Rings Twice " was being produced by the Casino de Paree. The act was not transferred to Harms, Inc., but only the right to use the song. Harms, Inc., then knew that the act was being produced.

The conclusion is inescapable that the defendant in its picture actually used substantial parts of plaintiff's act, " The Postman Always Rings Twice," and that the use thereof was not a " fair " use. " It is enough that substantial parts were lifted " (*Sheldon* v. *Metro-Goldwyn Pictures Corporation*, [C. C. A.] 81 F. [2d] 49), with " the felonious intention of appropriating without independent labor a material part of a protected work." (*Fendler* v. *Morosco*, 253 N. Y. 281.)

I find that the dramatization or illustration or portrayal by the defendant of the song " When I Hear My Doorbell Ring," forming a part of defendant's picture entitled " The Doorman's Opera," was deliberately and intentionally copied from the plaintiff's dramatization and illustration or method of portrayal which formed part of the act entitled " The Postman Always Rings Twice." The idea of portraying or illustrating the song was not the subject of copyright. However, the plaintiff's particular method of expression of portrayal could not be copied or plagiarized. (*Sheldon* v. *Metro-Goldwyn Pictures Corporation, supra,* 81 F. [2d] 49, at p. 54.)

I find that there is a similarity and substantial identity of character, paralleling of incident, and sequence of details of the defendant's picture and the plaintiff's sketch. Though there is no copyright in the " idea " of presenting a song by means of a sketch, the *expression* of the idea may not be copied. (*Sheldon* v. *Metro-Goldwyn Pictures Corporation, supra.*)

In the *Sheldon* case (*supra*) the court holds (81 F. [2d] 49, at pp. 55, 56): "A play may be pirated without using the dialogue. * * * Were it not so, there could be no piracy of a pantomime. * * * Speech is only a small part of a dramatist's means of expression; he draws on all the arts and *compounds* his play from *words* and *gestures* and *scenery* and *costume* and from the very *looks* of the actors themselves. * * * True, much of the picture owes nothing to the play; some of it is plainly drawn from the novel; but that is entirely immaterial; *it is enough that substantial parts were lifted;* no plagiarist can excuse the wrong by showing how much of his work he did not pirate. We cannot avoid the conviction that, if the picture was not an infringement of the play, there can be none short of taking the dialogue." (Italics mine.)

In *Fendler* v. *Morosco* (253 N. Y. 281, at p. 287) the court states: "There may be literary property in a particular combination of ideas or in the *form* in which ideas are embodied. There can be none in the ideas." (Italics mine.)

The act consisted of more than directions for a dance, and was, therefore, the subject of copyright. (*Daly* v. *Palmer,* 36 How. Pr. 206, 214–220; 6 Fed. Cas. No. 3,552.)

The defendant, however, had the absolute right to employ the music and the lyrics of the song and it could not be restricted to any routine of dancing. The picture of the defendant also contained other scenes which the defendant had the right to produce. It is also evident that the details of the play are interwoven with the music and that the music and the lyrics of the song "When I Hear My Doorbell Ring" formed an important part of the act and the defendant's picture. No valuation of the details of the act separate from the music and the lyrics has been given.

The plaintiff's sketch was produced in about ten or fifteen minutes. The parts of it that were copied by the defendant include the exhibition of several houses, the doors of which contain doorbells, and the entry and exit of several postmen, several brushmen and several sweethearts. The picture of the defendant, so far as it refers to the song, "When I Hear My Doorbell Ring," is produced in about five minutes and the entry and exit of the postmen, brushmen and sweethearts is exhibited in about a minute and a half.

The action of the copied parts is necessarily exhibited quickly and forms a comparatively slight part of the defendant's picture. The sketch was not of considerable value. The sketch other than the music and lyrics was of some value.

I find that there has been an infringement of the plaintiff's common-law copyright in its sketch, but that the consequential damages were not serious.

In determining the damage which plaintiff sustained, these facts must be taken into consideration.

I find for the plaintiff in the sum of $2,000 and direct judgment accordingly.

Exception to the defendant.